IN THE MATTER OF THE TRUST FOR THE BENEFIT OF WILLIAM C. RIKER UNDER ARTICLE SIXTH (a) OF THE WILL OF MARY JACKSON RIKER, DECEASED.

IN THE MATTER OF THE TRUST FOR THE BENEFIT OF WILLIAM C. RIKER UNDER ARTICLE SIXTH (b) OF THE WILL OF MARY JACKSON RIKER, DECEASED.

Superior Court of New Jersey
Law Division Probate Part
Monmouth County

September 14, 1983.

226

*Charles F. Gibbs,* Attorney for Trustee, Manufacturers Hanover Trust Company.

*Robert C. Lawrence,* III, Attorney for Trustees of William C. Riker testamentary trust.

*Robert D. Broege,* Guardian ad Litem for interested minors.

McGANN, J.S.C.

The Manufacturers Hanover Trust Company as sole surviving trustee of two separate trusts under the last will and testament of Mary J. Riker, sought approval of its first intermediate accounting on each trust. The trusts were established under Article Sixth (a) and Article Sixth (b) of the will. They are designated hereinafter as the "A" Trust and the "B" Trust. The period of the accounting for the "A" Trust was from February 26, 1971 to April 19, 1981, and for the "B" Trust from February 26, 1971 to May 14, 1981. The accounts were approved as stated.

Corpus commissions on the "A" Trust of $35,978.72 were allowed and on the "B" Trust, $21,945.55. Reserved for decision was this issue: Should commissions on the final account be computed in accordance with *N.J.S.A.* 3A:10–2 or *N.J.S.A.* 3B:18–28? Implicated in that decision is *N.J.S.A.* 3B:18–33—the "transitional" statute which applies to trusts in being prior to February 29, 1980 but which are administered and terminate subsequent to that date. A review of the recent history of fiduciary corpus commissions is helpful to determine legislative intent and to resolve the issue.

At the time the trusts were funded, the trustee looked to *N.J.S.A.* 3A:10–2 in anticipating what corpus commissions might ultimately be earned and allowed to reimburse it for the responsibilities and duties of the office. That statute provided for commissions of 5% on corpus of trusts up to $100,000 in value and, on the value in excess of $100,000, a percentage not to exceed 5% as allowed by the court, depending on services rendered and responsibility assumed. (Counsel have assumed that for trust estates of the magnitude involved here and for purposes of illustrative calculations set forth in arguing the meaning and intent of the statutes, an allowance of 3½% would be probable.)

In the case of trusts whose administration extended beyond 25 years, the statute provided that for each year thereafter the trustee was entitled to additional annual corpus commissions not to exceed ⅕ of 1% of corpus. On the final accounting the court would, within the limitations of the statute, allow corpus commissions "according to actual service rendered". Against this amount, allowances previously authorized on intermediate accounts were deducted as payments received on account.[1] In long-term administrations, the difficult problem for the court was not calculation of the total commissions to be allowed on the

---

[1]By statute, additional allowances are permitted where there is more than one fiduciary. For simplicity they are not discussed here.

final accounting, but rather what commissions were prudent to allow on intermediate accountings. *In re Moore's Estate,* 50 *N.J.* 131 (1967).

In 1972 *N.J.S.A.* 3A:10–2 was amended to permit a trustee to take annual commissions not to exceed $1,100 without court approval. However, it was clear that on the next intermediate or final accounting those amounts received were to be credited against the commissions fixed and allowed by the court. In 1979 (effective February 29, 1980), *N.J.S.A.* 3A:10–2 was further amended to allow as annual corpus commissions to be taken without court approval an amount equal to ⅕ of 1% of corpus. Such annual commissions taken without court approval were "subject to review on intermediate and final accountings" and if found to exceed commissions allowable according to this basic structure set forth above, might "be disallowed" by the court.

In 1979 (also effective February 29, 1980) the Legislature enacted *N.J.S.A.* 3A:10–2.1 which in subsections (b) and (c) provided:

> On the settlement of accounts fiduciaries acting as trustees under a will ... shall be entitled to commissions over and above their actual expenses as in this section provided.
>
> .    .    .    .    .    .    .    .
>
> b.[2] Fiduciaries may annually, without court allowance, take commissions on corpus ... in the amount of ⁵⁄₁₀ of 1% of the first $100,000.00 of value of corpus, ³⁄₁₀ of 1% of the next $100,000.00 of value, and ²⁄₁₀ of 1% of the value in excess of $200,000.00...
>
> c.[3] In addition to the annual commissions on corpus, upon termination of the trust ... or upon distribution of assets from the trust ... the fiduciary may take a commission on corpus distributed ... The amount of commissions to be taken are as follows:
>
> (1) If the distribution of corpus occurs within 5 years of the date when such corpus came into the hands of the fiduciary, an amount equal to the annual commissions on corpus authorized pursuant to subsection b. of this section, but not actually taken by the fiduciary, plus an amount equal to 2% of the value of the corpus distributed.

[2]Recodified as *N.J.S.A.* 3B:18–25.

[3]Recodified as *N.J.S.A.* 3B:18–28.

(2) If distribution of the corpus occurs between 5 and 10 years of the date when the corpus came into the hands of the fiduciary, an amount equal to the annual commissions on corpus authorized pursuant to subsection b. of this section, but not actually received by the fiduciary, plus an amount equal to 1½% of the value of the corpus distributed.

(3) If the distribution of corpus occurs more than 10 years after the date the corpus came into the hands of the fiduciary, an amount equal to the annual commissions on corpus authorized pursuant to subsection b. of this section, but not actually received by the fiduciary, plus an amount equal to 1% of the value of the corpus distributed.

*N.J.S.A.* 3B:18–27 provides:

Commissions taken as provided in *N.J.S.A.* 3B:18–25 shall be subject to review on intermediate and final accountings, and to extent that aggregate commissions so taken exceed the commissions allowable under this article they may be disallowed.

*N.J.S.A.* 3B:18–32 (recognizing the overlapping in trust administration caused by the 1979 amendments) provides:

With respect to fiduciaries' *annual* corpus commissions, the rates set forth in this article shall apply for all annual periods ending after February 29, 1980. (Emphasis added)

*N.J.S.A.* 3B:18–33 addressed the question of computation of total final commission to be received by a trustee in this fashion:

With respect to the computation of corpus commissions pursuant to *N.J.S.A.* 3B:18–28 as to all corpus held by a fiduciary on February 29, 1980, the commissions which may be taken shall be at the rate authorized as of the date the corpus was received by the fiduciary, and the "annual commissions authorized" to be taken for yearly periods ending prior to February 29, 1980, shall be at the rate authorized by the applicable law in effect during that yearly period.

Here, prior to February 29, 1980, pursuant to *N.J.S.A.* 3A:10–2, the Trustee had taken on account of commissions to be sought on the "A" Trust $7,392.00 and on the "B" Trust, $7,035.04. Subsequent to February 29, 1980, pursuant to *N.J.S.A.* 3A:10–2.1 (now *N.J.S.A.* 3B:18–25) as provided by *N.J.S.A.* 3B:18–32 and prior to presenting its intermediate accounts the trustee had paid to itself additional annual commissions on the "A" Trust of $6,711.52 and on the "B" Trust of $4,379.90.

The guardian ad litem and trust beneficiaries contend that a fair reading of *N.J.S.A.* 3B:18–33 leads to the conclusion that where the trust corpus was created prior to February 29, 1980, total commissions are governed by *N.J.S.A.* 3A:10–2; that total commissions are to be fixed on the final accounting based on 5% of the first $100,000 of corpus and not more than 5% on the

excess over $100,000. It is their position that credit against that final amount must be given by the trustee for annual amounts taken pursuant to *N.J.S.A.* 3A:10–2 c or 3A:10–2.1 b (now *N.J.S.A.* 3B:18–25) and allowances made on intermediate accounts.

On the other hand, the trustee contends for a meaning of *N.J.S.A.* 3B:18–33 leading to the following result. Any trust in being prior to February 29, 1980 would be treated, for commission purposes, under *N.J.S.A.* 3A:10–2, but only up to February 29, 1980. Thereafter and until the final accounting, corpus commissions would be calculated under *N.J.S.A.* 3B:18–25 and 28. This position would require a court, in effect, to treat February 29, 1980 as the termination date of the trust for the purpose of calculating commissions due to that point, even though in fact the trust might continue for many years thereafter. That position under the facts of this case gives the trustee a very substantial increase in ultimate commissions over that it might have originally anticipated. The "final" commissions computable as of February 29, 1980 would be based upon the 5% under *N.J.S.A.* 3A:10–2. From that date, the trustees would be entitled to take the far more generous annual commissions permitted under *N.J.S.A.* 3B:18–25 *plus* the termination commission under *N.J.S.A.* 3B:18–28. An example of commissions resulting from the two methods of calculating commissions is illuminating:

Assuming a trust corpus of $2,000,000 the calculations of ultimate commissions for differing time lengths would be as follows:

### 25 Year Trust Life

A. Corpus Commission under *N.J.S.A.* 3A:10–2

| | |
|---|---:|
| 1. If it assumed that a 3½% allowance be made by the court on the balance over $100,000 | $71,500 |
| 2. If it is assumed that the maximum of 5% be made by the court | 100,000 |

### 25 Year Trust Life

B. Corpus Commissions under *N.J.S.A.* 3B:18–25 and 28
   (assume entire administration to be had after
   2/29/80)

   Annual commission

   | | | |
   |---|---|---|
   | .5 of 1% of $100,000 | $500 | |
   | .3 of 1% of $100,000 | 300 | |
   | .2 of 1% of $1,800,000 | 3,600 | |
   | | $4,400 x 24 years | $105,600 |
   | 1% of $2,000,000 termination allowance | | 20,000 |
   | | | $125,600 |

C. Trustee's calculations referring to administration
   before and after February 29, 1980. There had been
   12 years of administration prior to 2/29/80 and
   it is assumed that the overall period of administra-
   tion will be 25 years.

   | | |
   |---|---|
   | *N.J.S.A.* 3A:10–2 commissions $71,500 x $^{12}/_{25}$ | 34,320 |
   | *N.J.S.A.* 3B:18–25 commissions estimated time 12 years x $4,400 | 52,800 |
   | *N.J.S.A.* 3B:18–28 commissions | 20,000 |
   | | $107,120 |

For comparison purposes if a full 5% allowance were made
under *N.J.S.A.* 3A:10–2 the ultimate commissions would be as
follows:

| | |
|---|---|
| *N.J.S.A.* 3A:10–2   $100,000 x $^{12}/_{25}$ | $48,000 |
| *N.J.S.A.* 3B:18–25 | 52,800 |
| *N.J.S.A.* 3B:18–28  1% of $2,000,000 | 20,000 |
| | $120,800 |

### 15 Year Trust Life

| | |
|---|---|
| *N.J.S.A.* 3A:10–2 at 3½% | 71,500 |
| *N.J.S.A.* 3A:10–2 at 5% | 100,000 |
| *N.J.S.A.* 3B:18–25  14 years x $4,400 | 61,600 |
| *N.J.S.A.* 3B:18–28  1% of $2,000,000 | 20,000 |
| | $ 81,600 |

### 10 Year Trust Life

| | |
|---|---|
| *N.J.S.A.* 3A:10–2 at 3½% | 71,500 |
| *N.J.S.A.* 3A:10–2 at 5% | 100,000 |

10 Year Trust Life

| | | |
|---|---|---:|
| N.J.S.A. 3B:18–25 | 9 years x $4,400 | $39,600 |
| N.J.S.A. 3B:18–28 | at 1½% of $2,000,000 | 30,000 |
| | | $ 69,600 |

As the legislative statement appended to P.L.1979 Ch. 501 indicates, by those 1979 amendments the legislature accomplished a number of goals. First, there was a desire to separate the award of corpus commissions to executors and administrators (short term administration) from that of trustees and guardians (generally longer term administration.) The structure of N.J.S.A. 3A:10–2 was preserved for the former (now N.J.S.A. 3B:18–14 to 22); a more liberal view was taken of the latter—N.J.S.A. 3A:10–2.1 (now N.J.S.A. 3B:18–25 to 33.) When one compares the new commission rates for trustees with the old (and allowing for the variable rate that might be applied by a court under N.J.S.A. 3A:10–2) it may be generally stated that on a trust administration lasting longer than 10 years a trustee would receive more in ultimate commissions under the new law than under the old. Conversely, for trusts administered less than 10 years the trustee would receive more under the old law than the new.

A second expressed purpose was to benefit both trustee and beneficiaries for income tax purposes by allowing the enhanced annual commissions.

Because under the new law the annual commissions automatically taken were still subject to disallowance on intermediate or final accountings a "cushion" was reserved for the court on the final accounting by way of a termination commission. Presumably it is possible that on review of the final account a court might determine to withhold the termination commission in whole or in part.

Clearly the legislature intended that a trustee should be allowed to take the benefits of the enhanced annual commissions immediately upon the effective date of the legislation—February 29, 1980. N.J.S.A. 3B:18–32.

The crucial issue is whether, having entered upon the trust administration under *N.J.S.A.* 3A:10–2 the trustee is bound as to ultimate commissions by the rate structure established therein or rather, as it urges, that its trust administration be broken into two phases for commission purposes—one ending on February 29, 1980 and subject to *N.J.S.A.* 3A:10–2 and the second, commencing March 1, 1980 and subject to *N.J.S.A.* 3B:18–25 and 28.

The legislature sought to address that problem in *N.J.S.A.* 3B:18–33 which, again, provides (in pertinent part):

> With respect to the computation of corpus commissions pursuant to *N.J.S.* 3B:18–28 *as to all corpus held by a fiduciary on February 29, 1980,* the commissions which may be taken *shall be at the rate authorized as of the date the corpus was received by the fiduciary* . . . . (Emphasis supplied)

The legislative intent seems clear. It comports with the expectations of a trustee which undertook its responsibilities on the understanding that it would be paid under *N.J.S.A.* 3A:10–2. Thus, if one ignores the opening phrase of the statute it reads: " . . . as to all corpus held by a fiduciary on February 29, 1980 the commissions (on corpus) which may be taken (read "allowed by the court", see *N.J.S.A.* 3B:18–27) shall be at the rate authorized as of the date the corpus was received by the fiduciary . . . ". The rate then allowed to this fiduciary was the 5% authorized by *N.J.S.A.* 3A:10–2 (and, since the repeal of *N.J.S.A.* 3A:10–2, that same rate as preserved by *N.J.S.A.* 3B:18–33.) The opening phrase adds confusion by its reference to *N.J.S.A.* 3B:18–28. That section is entitled "Corpus commissions on termination of trust" and that is the subject addressed in *N.J.S.A.* 3B:18–33. To that extent the reference is not confusing. The *content* of *N.J.S.A.* 3B:18–28, however, provides the new scheme consisting of a termination commission on top of the annual commissions of *N.J.S.A.* 3B:18–25. If the content is what the legislature intended by the reference, the language which follows is meaningless. The draftmanship is not perfect. That is not rare with legislative enactments, yet the overall intent is quite clear and sensible.

Both sides to the issue mention a recent bill (A 1458 introduced May 20, 1982) passed by both houses of the legislature but conditionally vetoed by the Governor on June 13, 1983. It provided:

> With respect to the computation of corpus commissions pursuant to *N.J.S.* 3B:18–28 as to all corpus held by a fiduciary on February 29, 1980, the commissions which may be taken shall be the greater of (1) the commission permitted by law effective prior to February 29, 1980, or (ii) the commission computed pursuant to *N.J.S.* 3B:18–28 provided that the 'annual commissions authorized' to be taken for yearly periods ending prior to February 29, 1980 shall be at the rate authorized by the applicable law in effect during that yearly period. [New Jersey Assembly Bill No. 1458, introduced May 20, 1982.]

The statement accompanying it recites:

> There was confusion regarding the method of computation for commissions for trustees ... in P.L.1979, Chapter 501 (now *N.J.S.A.* 3B:18–33) ... (T)his bill makes clear how the amount due such fiduciaries would be determined.

In effect, the proposed amendment gives to trustees of trusts spanning the periods covered by the old and the new law, the greater of ultimate commissions computed under either the old or new law. If adopted it would lend support to the trustee's position here. Generally, a trustee whose administration spanned both periods would elect *N.J.S.A.* 3A:10–2 commissions for a trust of 10 years or less and *N.J.S.A.* 3B:18–25 and 28 commissions for a trust of more than 10 years.

However, insofar as present law is concerned that proposed amendment bears out this court's view that the reference in *N.J.S.A.* 3B:18–33 to *N.J.S.A.* 3B:18–28 is a general one intending a computation of ultimate commissions allowed and not one to the specific method provided by the content of *N.J.S.A.* 3B:18–28.

In conclusion then, I rule that insofar as computation of ultimate compensation by way of corpus commissions to be paid by a trustee, if the trust corpus was received prior to February 29, 1980, the rates contained in *N.J.S.A.* 3A:10–2 prevail. That means a maximum allowance of 5% including all commissions taken annually and allowed on intermediate accountings. Pursuant to the second clause of *N.J.S.A.* 33:18–33, such trustee would be entitled to take the benefits of the enhanced annual

commissions provided by *N.J.S.A.* 3B:18–25 but would have to give credit for them on the final accounting.

On this intermediate accounting, the rates and law applicable to *N.J.S.A.* 3A:10–2 apply. Therefore, all annual commissions taken, whether under *N.J.S.A.* 3A:10–2 or *N.J.S.A.* 3B:18–25 must be credited against the allowances previously made.

As to the "A" trust, the allowance was $35,978.72. Total annual commissions taken were $14,103.52. The trustee may pay itself the difference of $21,875.20. As to the "B" trust, the allowance was $21,945.55. The total annual commissions taken were $11,412.94. The trustee may pay itself the difference of $10,532.61.