657 A.2d 1217

IN THE MATTER OF HERBERT REUTLINGER,
AN INCOMPETENT, NOW DECEASED.

Argued January 17, 1995—Decided May 24, 1995.

*Ruth Charbonneau*, General Counsel, argued the cause for appellant Public Guardian for Elderly Adults of New Jersey (*Patricia Kotyk–Zalisko*, Public Guardian, attorney).

*Steele R. Chadwell* argued the cause for *amicus curiae* New Jersey State Bar Association (*William B. McGuire*, President, attorney; *Michael K. Furey*, on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal concerns what property is included as "corpus distributed" in the calculation of a guardian's termination commission pursuant to *N.J.S.A.* 3B:18–28. Both plaintiff, the Public Guardian for Elderly Adults of New Jersey (the Guardian), and *amicus*, New Jersey State Bar Association (NJSBA), claim that real property remaining in the estate at the time of termination is included in the corpus distributed. The trial court and the Appellate Division reached the opposite conclusion.

## I

The facts are simple. In August 1991, on motion of Monmouth Medical Center, the trial court issued an order declaring that Herbert Reutlinger (the Ward) was a mental incompetent due to unsoundness of mind, and was incapable of managing his own affairs. At the same time, the trial court appointed the Guardian as guardian of the Ward's person and property. The Guardian continued in that capacity until the Ward's death five months later in January 1992. The Ward left a will devising his estate to a beneficiary.

When the Guardian was appointed, the Ward had assets totalling approximately $164,000, including real property that consisted of a house with a presumptive value of $110,000. The order of appointment authorized the Guardian to sell the Ward's real property if it was found in his best interest; however, before executing a deed, the Guardian would have to have the proposed sale confirmed by the court. The Guardian took possession of the real property, but did not sell it during the guardianship period.

In December 1992, the Guardian filed an action for settlement of her First and Final Accounting of the guardianship. No opposition was filed. During the guardianship, the Guardian expended $17,000 for the Ward's care, leaving a balance of $147,000. The Guardian sought approval of the following statutory commissions: *N.J.S.A.* 3B:18–24 (income) commissions in the sum of $53; *N.J.S.A.* 3B:18–25 (annual corpus) commissions in the sum of $274; and *N.J.S.A.* 3B:18–28 (termination) commissions in the sum of $2,941. The termination commission was calculated by multiplying the total amount of assets remaining in the Ward's estate at the time of his death by the applicable two-percent rate provided by *N.J.S.A.* 3B:18–28.

The trial court approved the statutory commissions requested by the Guardian with the exception of the termination commission. The court reduced that commission from $2,941 to $1,091. The court arrived at the lower figure by subtracting the value of the real property, $109,950, from the value of the estate when the

Guardian was appointed, $164,485, and then by applying the two-percent rate to the balance of $54,535. Accordingly, the court held that the corpus distributed—the amount on which the *N.J.S.A.* 3B:18–28 termination commission is calculated—was the value of the estate when the Guardian had been appointed, less the real estate remaining in the estate when the Ward had died. In February 1993, the Guardian filed a motion for reconsideration, asserting that the correct termination commission was $3,289, two percent of the estate at the time of her appointment as Guardian, including real estate, or $164,000.

After a hearing, the trial court denied the motion for reconsideration. The court asserted that the Ward had retained title to the real estate until he had died, that the Guardian never had had title to it, and that the Guardian thus never had "distributed" it. Even on the Ward's death, the trial court reasoned, the real estate had passed to the beneficiary by will, and had never been handled by the Guardian. Hence, the trial court concluded, the real estate was not "corpus distributed" for purposes of calculating the *N.J.S.A.* 3B:18–28 commission.

The Appellate Division, in a *per curiam* opinion, affirmed the trial court's denial of the motion for reconsideration. The Appellate Division, however, added to the trial court's analysis the observation that in other statutes the corpus on which commissions are calculated is not limited by the word "distributed." For example, *N.J.S.A.* 3B:18–25 provides that annual commissions are calculated on the basis of the unrestricted term "corpus." Pursuant to *N.J.S.A.* 3B:18–24, income commissions are calculated on the basis of "income that comes into [the guardian's] hands." That court reasoned, therefore, that unsold real estate did not constitute "corpus distributed" under *N.J.S.A.* 3B:18–28.

We granted certification, 137 *N.J.* 312, 645 *A.*2d 140 (1994), and now reverse.

## II

The trial court and the Appellate Division concluded that because *N.J.S.A.* 3B:18–28 refers to "corpus distributed," the corpus on which the commission is calculated must exclude real estate that the guardian has not sold, transferred, or otherwise handled. That analysis is faulty for a number of reasons. First, it is inconsistent with the plain language of *N.J.S.A.* 3B:18–28 and *N.J.S.A.* 3B:12–38, and their legislative history.

*N.J.S.A.* 3B:18–28, entitled "Corpus commissions on termination of trust, guardianship or upon distribution of assets," provides that

upon termination of the trust or guardianship, or upon distribution of assets from the trust or guardianship, the fiduciary may take a commission on corpus distributed, including accumulated income which has been invested by the fiduciary. . . . The amount of the commissions to be taken are as follows:

a. If the distribution of corpus occurs within 5 years of the date when the corpus is received by the fiduciary, . . . . an amount equal to 2% of the value of the corpus distributed. . . .

The statute then outlines the rates of commissions, which depend on how long the trust or guardianship has been administered. Each section begins, "If the distribution of corpus occurs within" a stated number of years, either five years, between five and ten years, or more than ten years after "the corpus came into the hands of the fiduciary," then a certain rate of commission applies. *Ibid.*

According to the plain language of the statute, the corpus commission is payable when the guardianship terminates or when part of the corpus is distributed. There is no requirement that the assets actually be sold or otherwise "handled" by the fiduciary. The commission is triggered by either termination of the guardianship or distribution of assets prior to termination. For assets that the guardian distributes during the guardianship, the guardian may elect to take the *N.J.S.A.* 3B:18–28 commission at the time of that distribution *or* at the termination of the guardianship: the guardian may take the commission "upon termination of . . . guardianship, *or* upon distribution." *Ibid.* (emphasis added). Thus, to distribute means either to distribute assets

during the guardianship or to transfer the corpus when the guardianship is terminated by reason of the Ward's attaining majority, regaining competency, or, as here, dying. The other two commission statutes that the Appellate Division cited do not contain such an option.

■ The meaning of the term "corpus distributed" is further clarified by the legislative history of *N.J.S.A.* 3B:18–28 and related statutes. In the 1970's, the Legislature began a major revision of the State's probate law, adopting several provisions of the Uniform Probate Code. After revising Title 3A several times in the 1970's, the Legislature undertook the final revision in 1981. In 1981, the Legislature repealed Title 3A, but reenacted its substance in Title 3B. *L.*1981, *c.* 405.

The language "corpus distributed" first appeared in section 3A:10–2.1, which was enacted as part of the 1979 reform package. *L.*1979, *c.* 501, § 2. That statute was the source section for current *N.J.S.A.* 3B:18–28, and the language of the two statutes is substantially similar. Because "corpus distributed" first appeared in a section that was part of the 1979 revisions, the use of the word "distribute" in other sections enacted in 1979 sheds light on the meaning of "corpus distributed." Those other sections concern the powers and duties of guardians of minors and mental incompetents.

■ Those sections demonstrate that "corpus distributed" includes the entire corpus remaining when the guardianship terminates for any reason. For example, when a minor reaches the age of eighteen, "his guardian, after meeting all prior claims and expenses of administration, shall *pay over and distribute* all funds and properties to the former ward as soon as possible." *N.J.S.A.* 3B:12–54 (emphasis added) (*L.*1979, *c.* 482, § 17, originally codified as 3A:6–16.22). If an incompetent ward returns to competency, "the guardian, after allowance of his final account, shall *pay over and distribute* all funds of the former ward." *N.J.S.A.* 3B:12–63 (emphasis added) (*L.*1979, *c.* 482, § 28, originally codified as 3A:6–16.26). If an incompetent ward dies during the period of guard-

ianship, the guardian is required to deliver the will, if there is one, to the court "and retain the estate *for delivery* to a duly appointed personal representative of the decedent or other persons entitled thereto." *N.J.S.A.* 3B:12–60 (emphasis added) (*L.*1979, *c.* 482, § 29, originally codified as 3A:6–16.27). The guardian may petition the court for an appointment as personal representative "so that he may proceed *to administer and distribute* the decedent's estate without additional or further appointment." *N.J.S.A.* 3B:12–61 (emphasis added) (*L.*1979, *c.* 482, § 29, originally codified as 3A:6–16.27).

The use of the term "corpus distributed" in those statutes obviously refers to the final disposition of all assets remaining in the estate at the termination of the guardianship, regardless of the reason for termination. Although the Appellate Division focused on the use of the term "corpus" rather than the term "corpus distributed" to justify its use of different calculations for the annual and termination commissions, the legislative history supports our conclusion that no difference was intended and that the same amount of corpus should be used for both calculations. *See In re Riker Trust,* 192 *N.J.Super.* 225, 230–31, 469 *A.*2d 537 (Law Div.1983) (comparing calculation of annual and termination commissions before and after effect of new section *N.J.S.A.* 3A:10–2.1).

## III

Likewise, an examination of the plain language of *N.J.S.A.* 3B:12–38 and its legislative history also supports the conclusion that even unsold real property must be considered corpus on which termination commissions are calculated.

*N.J.S.A.* 3B:12–38 provides, "The appointment of a guardian of the estate of a minor or mental incompetent vests in him title as trustee to all property of his ward, presently held or thereafter acquired." The statute, therefore, on its face provides that real property owned by a ward at the time of appointment comes into the hands of the guardian. The first enactment of such a provi-

sion was *N.J.S.A.* 3A:6–16.13—the source section for *N.J.S.A.* 3B:12–38—which was also part of the 1979 reform package. *L.*1979, *c.* 482, § 4.

An examination of the legislative history of *N.J.S.A.* 3B:18–28 supports the conclusion that undisposed real property that is received by the guardian should be included in the base for computing termination commissions. The statutory scheme evolved through various amendments. Prior to 1942, termination commissions based on the corpus at the time of the guardian's appointment did not include the ward's undisposed real estate. In 1942, the Legislature added a provision specifically providing that "the reasonable value [of the real estate] may be considered as corpus receipts, or corpus which comes into [the guardian's] hands, for the purpose of fixing the corpus commissions." *L.*1942, *c.* 258 § 1. That statute was originally codified as part of the former Title 3, and was then codified as *N.J.S.A.* 3A:10–3 when Title 3A replaced Title 3. *L.*1951, *c.* 345.

In New Jersey's final probate reform package, signed by Governor Brendan Byrne on January 5, 1982, certain sections of former Title 3A that were determined to be obsolete were not included in the new Title 3B. Among those sections that did not survive was 3A:10–3, which had specified that real estate not sold by the trustee was includible in the corpus for purposes of calculating termination commissions. The explanation for "repealing" this provision is contained in the legislative history:

> Since its enactment, Title 3A of the New Jersey Statutes has undergone many changes by way of amendments and supplements thereto.... As a result of these changes, sections of the existing law have become obsolete or superseded and by reason thereof have not been enacted as parts of the proposed new Title 3B.
>
> ....

12. *N.J.S.* 3A:10–3 provides that a fiduciary shall be entitled to corpus commissions on real estate coming into his possession. P.L.1977, c. 412, s. 54 (C. 3A:2A–54) provides that a personal representative has a right to and shall take possession or control of a decedent's property, and P.L.1977, c. 412, s. 5 (C. 3A:2A–55) provides that until termination of his appointment a personal representative has the same power over title to property of the estate that an absolute owner would have. P.L.1979, c. 482, s. 4 (C. 3A:6–16.3) provides that the appointment of a guardian of a minor or mental incompetent vests in the guardian title as trustee to

all of his ward's property. Title to real property forming a part of a trust estate vests in the trustee by operation of law. By virtue of the foregoing, *N.J.S.* 3A:10–3 has been superseded, and its retention is no longer necessary.

[*L.*1981, *c.* 405 (Sponsor Statement to Assembly No. 3580).]

This commentary indicates that the Legislature found that the provision allowing for commission on unsold real estate was no longer necessary because title to all of the ward's property vested in the guardian or fiduciary at the time of appointment under *N.J.S.A.* 3A:6–16.3 (currently codified as 3B:12–38). Therefore, the guardian would have to "distribute" the real property, along with the rest of the corpus, on termination. Real property was thus by definition included in the "corpus distributed" that is the statutory basis of termination commissions. That definition, in turn, rendered redundant the statute that explicitly included real property left unsold, which clarified why that statute was not reenacted in the final, 1981 probate reform. It was not "repealed"; rather, it was "not enacted" because it was "unnecessary."

Therefore, the correct basis for calculating termination commissions is the value of the estate at the time of the guardian's appointment. That is what the Guardian asked for on reconsideration.

IV

■ In seeking to exclude real estate left unsold, the courts below might have been attempting to protect the estates of elderly wards. As another basis for its ruling, the trial court asserted that the Legislature had not intended the kind of "double commissions" that result if a guardian gets a termination commission on unsold real estate, and then an executor gets a commission on selling that real estate. That argument also fails because there is no legislative prohibition of such "double commissions," and they occur in relation to property other than real estate.

Moreover, the exclusion of unsold real estate from the calculation of *N.J.S.A.* 3B:18–28 termination commissions would hurt

elderly wards, not help them. The courts err in suggesting an alternative. We find questionable the implication that guardians do little with unsold real estate, and that the guardians therefore have no right to a termination/distribution commission on unsold real estate. Real estate is in fact harder to maintain than other property, such as liquid assets. *Amicus* NJSBA aptly describes the particular difficulty of caring for the real property of an elderly incompetent:

> While the fiduciary of any estate commonly addresses significant management concerns with respect to real property, even in the best of circumstances, the guardian for the estate of an elderly person also must commonly address additional problems caused by old age, ill health or diminished capacity. The home often will have become unusually encumbered prior to death as liens for unpaid hospital bills and taxes incurred during the last illness need to be addressed. The decedent's inability to care for the property during a final illness often will mean that safety hazards and other property conditions must be addressed. In fact, in sharp contrast to the Appellate Division's assumption that real estate only becomes a significant administrative concern if the property is sold, the effort and skill needed to maintain such property is often far greater than that expended to sell it.

See also *Pomeroy v. Mills*, 37 *N.J.Eq.* 578, 582 (E. & A. 1883) (warning against corpus—commission structure that would force executors either "to do what would be for the disadvantage of those whose interests were entrusted to them, to convert into cash what could easily be divided and might better be preserved *in specie*, or else abandon all right to compensation").

Thus, the courts below gave insufficient weight to two realities: first, it is often harder to maintain real estate than other property; second, it is often much harder to maintain real estate than to sell it. For example, a guardian who sells a house would get an *N.J.S.A.* 3B:18–28 termination commission on any proceeds from the sale of the house left in the estate at the time of death. A guardian who maintained the house would get no *N.J.S.A.* 3B:18–28 commission on the value of the house at termination of the guardianship. Thus, the guardian who does more work gets less commission, and vice versa.

Although we in no way imply that guardians would take actions not in the best interest of their wards, as the Guardian pointed out, the opinions below might create incentives for a guardian to sell an elderly incompetent's house and place the ward in a nursing home. Although that might in many instances be bad for the ward, it would be easier and more remunerative for the guardian. Such a commission structure is unfair to guardians, and potentially bad for wards. As *amicus* NJSBA puts it, "making the guardian's compensation turn on what is done with the property is a false consideration that improperly injects profit considerations into a determination that should depend on the risk and effort that is being undertaken."

## V

Under *N.J.S.A.* 3B:18–28 and *N.J.S.A.* 3B:12–38, and in accordance with sound public policy, we hold that termination commissions are calculated on the basis of a corpus that includes real estate and other property left unsold at the termination of the guardianship. Accordingly, the Guardian shall receive a termination commission of two percent of the estate at the time of appointment, including the value of the house left unsold at the time of the Ward's death.

The judgment of the Appellate Division is reversed, and the case is remanded to the trial court for proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—none.